

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00091-CR

_____

JAMES KEVIN JOHNSON, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1717997R

_____

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

## I. Introduction

A jury found Appellant James Kevin Johnson guilty of online solicitation of a minor and assessed his punishment at five years in prison and a $3,000 fine. The jury further recommended that the trial court suspend Johnson's sentence and place him on community supervision. The jury did not recommend suspending the $3,000 fine. In accordance with the jury's verdict, the trial court sentenced Johnson to five years' confinement, suspended Johnson's sentence, and placed him on community supervision for eight years. The trial court fined Johnson $3,000 but did not suspend the fine.

In the trial court's judgment, however, the space for identifying the length of confinement is left blank. Further, the box for indicating that the trial court suspended Johnson's sentence and placed him on community supervision was not checked. Had the box been checked, it would have correctly indicated that the trial court had placed Johnson on community supervision for eight years. The judgment correctly reflects that Johnson was fined $3,000 and that the fine was not suspended.

Nine days later, the trial court attempted to correct the above clerical errors in an order nunc pro tunc. This order correctly reflects that the trial court sentenced Johnson to five years' incarceration, suspended his sentence of confinement, and placed him on community supervision. But it incorrectly provides that the trial court

placed Johnson on community supervision for five years (not the eight years stated at Johnson's sentencing).

On appeal, in one issue, Johnson contends that no evidence supported the finding that he committed the solicitation "over the Internet," as—he argues—the statute requires. Johnson maintains that there was no evidence that any of the text or electronic messages were sent over the Internet. The State responds that "over the Internet" was but one manner and means and that other manner and means were both authorized by the statute and proven at trial.

The State further requests that the judgment be modified to correctly reflect that the trial court suspended Johnson's sentence and placed him on community supervision for eight years.

We agree with the State, overrule Johnson's issue, modify the judgment to reflect that the trial court placed Johnson on community supervision for eight years, and as modified, we affirm the trial court's judgment.

## II. Discussion

## A. The Statutory Language and Johnson's Construction

Johnson was convicted of "Online Solicitation of a Minor" or, more specifically, Section 33.021(c) of the Texas Penal Code:

> (c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that

3

the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Tex. Penal Code Ann. § 33.021(c). Johnson argues that "[u]nder a plain reading of the statute, 'over the Internet' is a necessary element of the offense that can be accomplished 'by electronic mail or text message or other electronic message service or system, or through a commercial online service.'" We disagree.

## B. Construing Statutes

When interpreting statutes, we look to their literal text and attempt to discern their fair, objective meaning at the time of their enactment. *Herron v. State*, 625 S.W.3d 144, 153 (Tex. Crim. App. 2021). If the language is clear and unambiguous, our analysis ends. *Id.* Courts do not add or subtract from such a statute. *Id.*

Courts presume that the Legislature used every word for a purpose and intended for the entire statutory scheme to be effective. *Id.* Thus, courts should give each word, phrase, clause, and sentence effect if reasonably possible and will not choose a construction that renders a statutory provision superfluous. *Id.*; *State v. Schunior*, 506 S.W.3d 29, 36 (Tex. Crim. App. 2016).

## C. Superfluous

We first note that Johnson's construction would render superfluous the provision "by electronic mail or text message or other electronic message service or system, or through a commercial online service." Assuming the quoted language was

4

illustrative of "over the Internet," it would remain superfluous.[1]  We will not, however, end our analysis there.

**D. Terminology**

Although the computer crimes' chapter (Chapter 33) of the Texas Penal Code provides a section devoted to definitions, that section does not define "Internet," "electronic mail," "text message," "electronic message service or system," or "commercial online service."  Tex. Penal Code Ann. § 33.01.  When statutorily undefined terms have no established legal definition or have not acquired a technical meaning deviating from customary parlance, we use their commonly accepted meanings.  *See generally Gardner v. State*, 306 S.W.3d 274, 302–03 (Tex. Crim. App. 2009); *Pardun v. State*, No. 05-16-00792-CR, 2017 WL 5897897, at *5 (Tex. App.—Dallas Nov. 29, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *Celis v. State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013), and *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015)).

When looking for general definitions,[2] we have found the following:

---

[1]Merriam-Webster defines "superfluous" as "exceeding what is sufficient or necessary" or "not needed."  Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/superfluous (last visited April 27, 2023).

[2]We cite the Merriam-Webster Online Dictionary, PCMagazine, and Wikipedia for various definitions. We do not cite them as the authoritative definition of any word or term but as a generally understood definition of the term or word. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 435–37 (Tex. 2017) (discussing the pros and cons of citing to Wikipedia).  Our analysis requires placing some working

- The "Internet" is "an electronic communications network that connects computer networks and organizational computer facilities around the world—used with *the* except when being used attributively."[3]

- An "email" is "a means or system for transmitting messages electronically (as between computers on a network)."[4]

- A "text message" is "a short message sent electronically usually from one cell phone to another."[5]

- An "electronic message service" is "[t]he part of the radio spectrum assigned to electronic messaging over digital satellite circuits."[6]

---

context on the words and terms used. As two scholars noted, "The evident purpose of what a text seeks to achieve is an essential element of context that gives meaning to words. *Nail* in a regulation governing beauty salons has a different meaning from *nail* in a municipal building code." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 20 (2012) (footnote omitted). When faced with the undefined word "custody" in the Texas Rules of Appellate Procedure, the Texas Court of Criminal Appeals wrote, "A more appropriate manner of interpreting the meaning of a word or phrase used in the Texas Rules of Appellate Procedure is to apply its commonly-accepted meaning within the context of the given rule and then determine whether that meaning is consistent with the purpose of the rule." *Luciano v. State*, 906 S.W.2d 523, 524 (Tex. Crim. App. 1995).

[3]*Internet*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/internet (last visited April 27, 2023).

[4]*Email*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/email (last visited April 27, 2023).

[5]*Text Message*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/text message (last visited April 27, 2023).

[6]*Electronic Message Service*, PCMag, https://www.pcmag.com/encyclopedia/term/ems (last visited May 1, 2023). Wikipedia defines a "digital electronic message service" as "a two-way wireless radio service for passing of message and facsimile data . . . ." Wikipedia, https://en.wikipedia.org/wiki/Digital_Electronic_Message_Service (last visited May 1, 2023) (footnote omitted).

- As for "commercial online service," the closest analogous term we have found is an "internet service provider," which is defined as "[a]n organization that provides access to the Internet. Email accounts may also be part of the service. Also called an 'Internet host,' an ISP connects to users via cable, DSL, FiOS or satellite; however, ISPs can also deliver service via analog dial-up, ISDN, private lines and wireless (see WISP)."[7]

- "Online" is defined as "connected to, served by, or available through a system and especially a computer or telecommunications system (such as the Internet)."[8]

Consequently, the language used by the Legislature is not exclusively illustrative of communications conducted over the Internet. The language used is broader. For example, "text messages" is a term associated with cell phones. The statute casts a broader net than just internet communications; it encompasses electronic communications over the Internet or some "other electronic message service or system." Tex. Penal Code Ann. § 33.021(c).

### E. Not Ambiguous

We hold that Section 33.021(c) is not ambiguous. The clause, "by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person,

---

[7]*Internet Service Provider*, PCMag, https://www.pcmag.com/encyclopedia/term/isp (last visited May 1, 2023).

[8]*Online*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/online (last visited April 27, 2023).

including the actor," expands the scope of electronic communications beyond those strictly "over the Internet."  We read Section 33.021(c) to provide effectively,

> A person commits an offense if the person,
>     [1] over the Internet, or
>     [2] by
>         [a] electronic mail or
>         [b] text message or
>         [c] other electronic message service or system, or
>     [3] through a commercial online service,
> knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Thus, the question here is whether Johnson's communications with the complainant fall within that scope.

## F.  Testimony

When describing the offense of online solicitation of a minor, Detective Nate Bishop described it in terms of electronic communications:

> So online solicitation of a minor, to put very simply, it's people -- it's a person having used this electronic communication.  So it could be text messages, you know, Instagram, direct messages; some kind of electronic messaging in speaking with a person that either is under 17 or that they believe is going to be under 17.

Johnson is correct when he asserts that Bishop did not assert that the communications were "over the Internet."  On the other hand, Bishop did assert that the communications must be electronic in some fashion.

Turning to the offense itself, Bishop stated that—posing as a child—he created a false profile on an application called SayHi and left it idle, but eventually someone

8

contacted his profile. Bishop's use of the word "application" itself requires some explanation:

- An "application" has been defined as "[s]oftware that is used for business or entertainment," and "[t]he terms 'application,' 'application program,' 'software application,' 'software package' and simply 'app' may refer to virtually any type of program from spreadsheets such as Excel to media players such as iTunes. However, the term specifically excludes essential control software such as the operating system."[9]

- As for the term "app," that term "has been shorthand for 'application' in the IT community for a long time. However, it became popular with the consumer for mobile applications after Apple debuted the iPhone in 2008.[10] Application and app are synonymous, and it is just as correct to say 'iPhone application' as it is 'desktop computer app.'"[11]

During the testimony, communications over an app were referred to as "chats."

The term "chat" also has a definition:

- "Chat" refers to "[a] text communication via keyboard in real time between two or more users on a local network (LAN) or over the Internet. Although the original use of the term was only for text, 'chat'

---

[9]*Application*, PCMag, https://www.pcmag.com/encyclopedia/term/application (last visited May 1, 2023).

[10]As we will discuss later, the last amendment to Section 33.021(c) was in 2007 and thus predated the iPhone. Some words and terms that are common today are not in the statute and, effectively, must be retrofitted. Yet this is not fatal to our analysis. When discussing textualism, authors Justice Antonin Scalia and Bryan Garner wrote, "Textualism, in its purest form, begins and ends with what the text says and fairly implies." Scalia & Garner, *supra* note 2, 16. To illustrate this principle, they wrote, "Hence a 2012 statute referring to *aircraft*, if still in effect in 2112, would embrace whatever inventions the label fairly embraces, even inventions that could not have been dreamed of in 2012." *Id.*

[11]*App*, PCMag, https://www.pcmag.com/encyclopedia/term/app (last visited May 1, 2023).

became popular for every two-way communication," and thus "[a]udio and voice evolved into 'audio chat' and 'voice chat.' Videoconferencing and video calling became 'video chat.'"[12]

- Regarding any distinction between chats, texting, and instant messaging, PCMag provides the following comments, "All three terms are used synonymously. Texting (SMS) is built into every cellphone and usage only requires the recipient's phone number. All other chat services use a computer or phone app. Some require establishing an account and creating a contact list."[13]

Accordingly, the communications at issue might have been over the Internet; regardless, they were electronic.

Bishop went on to say that at some point, possibly by the first day, the communications transitioned from the SayHi application to phone text messages. Thus, at this point, we have two forms of electronic communications—chats over the SayHi application and text messages over Johnson's and the complainant's cell phones. To function, both had to be accomplished over the Internet or some "other electronic message service or system."

Bishop testified that once the communications transitioned to text messaging, he had a phone number from the sender that he was later able to trace to Johnson.

Through text messaging, Bishop and Johnson agreed to meet at a park. When Johnson appeared at the park, police arrested him.

_____

[12]*Chat*, PCMag, https://www.pcmag.com/encyclopedia/term/chat (last visited May 1, 2023).

[13]*Id.*

10

## G. Evidence Sufficient

We hold that the chats and text messages here fall within Section 33.021(c)'s scope. Thus, the evidence is legally sufficient to support Johnson's conviction. *See Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017) (stating that when determining evidentiary sufficiency, appellate courts view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt).

## H. Assuming the Statute is Ambiguous

Although perhaps inartfully drafted, Section 33.021(c) is not ambiguous insofar as it addresses types of communications. It applies to (1) communications over the Internet; (2) communications by electronic mail, text message, or other electronic message service or system; and (3) communications through a commercial online service.

But even assuming Section 33.021(c) is ambiguous, its legislative history leads us to the same result.

When first enacted in 2005, Section 33.021(c) provided,

> A person commits an offense if the person, over the Internet or by electronic mail or a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Act of May 25, 2005, 79th Leg., R.S., ch. 1273, 2005 Tex. Gen. Laws 4049, 4050 (amended 2007) (current version at Tex. Penal Code § 33.021(c)). As originally

11

written, Section 33.021(c) addressed communications "over the Internet" or "a commercial online service," which, as the above definitions show, appeared to have been more closely aligned with Johnson's position.

But in 2007, the Legislature amended Section 33.021(c) in House Bill 401 to expand its scope. The 2007 version added language to provide,

> A person commits an offense if the person, over the Internet, [~~or~~] by electronic mail *or text message or other electronic message service or system*, or *through* a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Act of May 21, 2007, 80th Leg., R.S., ch. 610, § 2, sec. 33.021(c), 2007 Tex. Gen. Laws 1167, 1168 (codified at Tex. Penal Code § 33.021(c)).

The legislative history confirms that expanding the scope of electronic communications was the purpose of amending the statute. Three bill analyses address the change to Section 33.021(c):

## 1. First Bill Analysis

The first bill analysis states that the amendment was designed to expand the scope of electronic communications to keep pace with technological advances:

### BACKGROUND AND PURPOSE

> Current statute does not explicitly contain certain types of communications that are considered sexual offenses against minors or certain students. With technological advances, new methods of communications between adults and minors or students are constantly being created. Dangerous predators are protected from prosecution by

12

using text messages or other electronic message service or system for solicitation of a minor.

H.B. 401 adds text messaging and other electronic message services or systems as ways that a person can commit an offense of solicitation of a minor.

House Comm. on Crim. Juris., Bill Analysis, Tex. H.B. 401, 80th Leg., R.S. (2007).

## 2. Second Bill Analysis

The second bill analysis reiterates that the amendment's purpose is to expand the scope of electronic communications:

BACKGROUND: . . . .

Under Penal Code sec. 33.021(c), it is an offense to use the Internet, electronic mail or a commercial on-line service knowingly to solicit a minor to meet another person, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse. This offense is a third-degree felony (two to 10 years in prison and an optional fine of up to $10,000), unless the minor is younger than 14 years old or is believed to be under 14, in which case it is a second-degree felony.

. . . .

DIGEST: HB 401 would add the use of text messages or other electronic message services to the ways in which the offense of on-line solicitation of a minor could be committed.

House Comm. On Crim. Juris., Bill Analysis, Tex. H.B. 401, 80th Leg., R.S. (2007).

Notably, this analysis states that opponents of the bill saw the amendment as unnecessary; it states, "OPPONENTS SAY: HB 401 is unnecessary because the actions described by [the] bill already are illegal and already appropriately punished." *Id.*

### 3. Third Bill Analysis

The third bill analysis notes the shortcomings in the 2005 version of the law and asserts that the amendment was designed to broaden the statute's scope:

**AUTHOR'S / SPONSOR'S STATEMENT OF INTENT**

> . . . . While it is a crime to use certain types of technology to solicit minors . . . , limited definitions of both crimes are a shortcoming in the current law.
>
> H.B. 401 adds the use of text messages or other electronic message services to the list of ways in which the offense of online solicitation of a minor may be committed.

S. Research Ctr. On Crim. Just., Bill Analysis, Tex. H.B. 401, 80th Leg., R.S. (2007).

So even assuming that Section 33.021(c) is ambiguous, we conclude that the legislative history shows that it was amended to encompass the chats and text messages here and, thus, that the evidence is sufficient to support Johnson's conviction. *See Queeman*, 520 S.W.3d at 622.

## I. Ruling

We overrule Johnson's issue.

## III. Clerical Error in Judgment

The State notes that the trial court's order nunc pro tunc incorrectly states that it placed Johnson on community supervision for five years. When sentencing Johnson, the trial court stated that it was placing him on community supervision for eight years. The oral pronouncement controls. *See Estrada v. State*, 647 S.W.3d 923, 926 (Tex. App.—Fort Worth 2022, pet. ref'd) (mem. op.). The State thus requests

that the judgment be modified to correctly reflect that the trial court suspended Johnson's sentence and placed him on community supervision for eight years.

We can correct clerical error and reform the trial court's judgment "to make the record speak the truth" when we have the necessary information to do so. *Barner v. State*, No. 02-22-00043-CR, 2023 WL 164088, at *2 (Tex. App.—Fort Worth Jan. 12, 2023, no pet. h.) (mem. op., not designated for publication). "We can effectively render a judgment nunc pro tunc." *Id.* We agree with the State and correct the judgment to reflect that the trial court suspended Johnson's sentence for eight years.

## IV.    Conclusion

We overrule Johnson's issue. To correct the clerical error, we delete the language in the trial court's May 13, 2022 "Nunc Pro Tunc Order Correcting Minutes of the Court" showing, "Defendant placed on community supervision for 5 years," and in its place, we modify that order to reflect, "Defendant placed on community supervision for 8 years." As modified, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  May 11, 2023

15